# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SCOTT GREGORY HATTRUP,

      **Plaintiff,**

v.

JULIA DENG A/K/A JULIA D. PALMER,

      **Defendant.**

Case No. 17-4083-DDC

## MEMORANDUM AND ORDER

Plaintiff Scott Gregory Hattrup[1] filed suit against the United States, Julia Deng, and John Doe to secure quiet title relief and an injunction to extend the redemption period arising from the judicial sale of his former property. Doc. 1 at 1. Only the claims against defendant Deng remain. The claims against the United States and John Doe have been dismissed.[2]

---

[1]     Plaintiff proceeds pro se, but his Complaint indicates that he was once a licensed attorney in Kansas. The Complaint references plaintiff's Kansas bar number and notes that he is inactive. Doc. 1 at 4 (noting plaintiff's bar number and inactive status in the signature block). Even though plaintiff was a licensed lawyer at one time, because he is registered as inactive and proceeds pro se, the court construes his pleadings liberally and holds them to a less stringent standard than those drafted by lawyers who are admitted to practice in this court. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Landrith v. Gariglietti*, No. 11-2465-KHV/GLR, 2012 WL 171339, at *1 (D. Kan. Jan. 19, 2012) (applying the pro se standard to a disbarred attorney proceeding pro se); *Conrad v. Educ. Res. Inst.*, No. 06-cv-00001-WDM-BNB, 2006 WL 3694856, at *2 n.1 (D. Colo. Dec. 13, 2006) (applying the pro se standard to an inactive attorney proceeding pro se).

    Plaintiff's status as an inactive lawyer means he was educated and trained in the law in a similar fashion as the attorney who represents defendant and thus applying this generous standard may be too lenient. Nevertheless, the court elects to give this plaintiff that benefit and still, he cannot survive summary judgment. As with all pro se litigants, the court does not assume the role of plaintiff's advocate. *Hall*, 935 F.2d at 1110. Nor does plaintiff's pro se status excuse him from complying with the court's rules or facing the consequences of noncompliance. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[2]     The court previously dismissed the claims against the United States. *See* Doc. 20. Any claims against John Doe, alleged to be an unknown IRS employee, to the extent asserted for actions taken in John Doe's official capacity, also were dismissed. Doc. 20 at 8–9 n.5. The Pretrial Order (Doc. 30) indicates only claims against defendant Deng remain.

Plaintiff contends he was denied due process because he did not receive post-sale notice from the Internal Revenue Service ("IRS") after the sale of his property. He now seeks injunctive relief and quiet title relief against defendant with respect to the quit claim deed issued by the IRS to defendant. And, he asserts a right to redeem his former property.

This matter comes before the court on three motions. Defendant has filed a Motion for Summary Judgment (Doc. 31). Plaintiff also has filed a Motion for Summary Judgment (Doc. 34). And, defendant has filed a Motion to Supplement (Doc. 37).

Defendant seeks summary judgment against each of plaintiff's claims. Docs. 31 & 32. Plaintiff has filed a Response (Doc. 36), and defendant has submitted a Reply (Doc. 38). Plaintiff seeks summary judgment on his injunctive and quiet title claims as well. Doc. 34. Defendant has filed a Memorandum in Opposition (Doc. 35). And, the time for plaintiff to file a reply has expired. Also, plaintiff has not filed any response to defendant's Motion to Supplement and the time to do so has expired. The matters thus are fully briefed, and, after considering the parties' arguments, the court now is prepared to rule.

For reasons explained below, the court grants defendant's Motion for Summary Judgment (Doc. 31) and Motion to Supplement (Doc. 37). The court denies plaintiff's Motion for Summary Judgment (Doc. 34).

## I.     Undisputed Facts

The following facts are either stipulated by the parties in the Pretrial Order (Doc. 30) or are uncontroverted for purposes of the parties' summary judgment motions.[3]

---

[3]     Plaintiff's Response to defendant's Motion for Summary Judgment does not controvert any of defendant's proposed Uncontroverted Statements of Fact, many of which were stipulated to already in the Pretrial Order. Plaintiff's own Motion for Summary Judgment relies solely on the stipulated facts in the Pretrial Order. And plaintiff did not submit any reply objecting to any of the additional facts set forth in defendant's Response to plaintiff's Motion for Summary Judgment.

*The Property at Issue and the IRS Sale*

Before and throughout 2016, plaintiff was the owner of, and resided in, the residence located at 11925 West 92nd Terrace, Lenexa, Johnson County, Kansas 66215 (the "Residence"). The IRS filed a tax lien and notices of the lien against the Residence at various dates from 2005 to 2012.

The IRS sought and received approval for a judicial levy on the Residence in a related suit before our court, *In the Matter of Tax Indebtedness of Scott G. Hattrup*, Case No. 15-mc-219-CM (D. Kan. 2015). The judicial levy was approved on February 10, 2016. The IRS provided plaintiff with a Notice of Seizure of the Residence on or about April 27, 2016, on Form 2433, as required by 26 U.S.C. § 6335(a). The IRS provided plaintiff with a Notice of Public Auction Sale on or about August 24, 2016, on Form 2434 ("Form 2434"),[4] as required by 26 U.S.C. § 6335(b), which listed October 6, 2016, as the intended sale date.

Page 1 of Form 2434, delivered to plaintiff, identified the date, time, and place the sale was to occur. It also identified the name and contact information for the Property Appraisal & Liquidation Specialist ("PALS"). It identified Jennifer L. Breuchaud as the PALS and provided her email address. Page 1 also gave an "Address for information about the sale" as 380 Office Ct, Fairview Heights, Illinois 62208 and provided a phone number.

Page 2 of Form 2434 stated the redemption rights before sale, per Section 6337(a) of the Internal Revenue Code. Page 2 also stated the redemption rights after the sale, per Section 6337(b) of the Internal Revenue Code, including a notice that the right of redemption runs for 180 days after the sale, and that the price of redemption is the amount paid at the sale plus interest on that price at 20% per annum.

---

[4] The parties stipulated to the admissibility of Form 2434 in the Pretrial Order. Doc. 30 at 7.

The sale took place on October 6, 2016. Ms. Breuchaud—the PALS identified on Form 2434—conducted the sale. Plaintiff did not attend the sale. Defendant attended the sale and was the high bidder. Defendant bid $40,000 at the sale, and, as the high bidder, paid the IRS $40,000 that same day.

***Other Encumbrances on the Residence***

The IRS sale "was conducted '*subject to any prior valid outstanding mortgages, encumbrances, other liens in favor of third parties against the taxpayer that are superior to the lien of the United States.*'" Doc. 36 at 2 (quoting Form 2434, Doc. 32-1 at 2 (emphasis in original)). The Residence was offered for sale "'where is' and 'as is' and without recourse against the United States." *Id.* (quoting Form 2434, Doc. 32-1 at 2).

The sale of the Residence was subject to senior encumbrances held by the Johnson County Treasurer and by the Kansas Department of Revenue, both agencies of the State of Kansas. The Johnson County Treasurer and the Kansas Department of Revenue were not parties to the judicial levy action in federal court, nor were they identified as parties receiving notice of the judicial levy action.

Johnson County had scheduled a sale of the Residence for November 2016 for payment of the delinquent property taxes. The buyer at the October 2016 IRS sale was responsible for paying delinquent property tax before the Johnson County sale. Form 2434 referred to "Approx $60,138.49 in senior encumbrances that will be paid by the buyer." Doc. 32-1 at 1. It also referenced the planned November 2016 Johnson County sale, explaining "the[] buyer at the 10/6/16 auction will be responsible for payment of delinquent property tax to the County before

the County Sale." *Id.* As explained below, this Johnson County sale did not take place and defendant did not pay the delinquent property taxes before November 2016.[5]

### *Post-Sale Activity During the Redemption Period*

Following the sale, the IRS issued defendant a Certificate of Sale of Seized Property.[6] Ms. Breuchaud handed this certificate to defendant the day of the sale. Ms. Breuchaud signed the certificate in her capacity as an IRS employee. The IRS also gave defendant a letter dated October 6, 2016, notifying defendant that plaintiff had 180 days after the sale to redeem, that the redemption period ended April 4, 2017, and—if the property was not redeemed—that the IRS would issue defendant a quit claim deed in exchange for the surrender of the Certificate of Sale of Seized Property and a statement from her that the property had not been redeemed.[7] Ms. Breuchaud also handed this letter to defendant the day of the sale. This letter was signed by Ms. Breuchaud in her capacity as PALS.

Sometime between the October 6, 2016 IRS sale and the Johnson County sale scheduled to take place in November 2016, defendant contacted the Johnson County Treasurer's Office to have the sale cancelled. Later, as explained below, defendant paid the delinquent property taxes owed to Johnson County.

---

[5]      Plaintiff's Response to defendant's Motion for Summary Judgment asserts an additional uncontroverted fact claiming that "Defendant paid the delinquent property taxes on May 17, 2017, *after the scheduled sale and the time noted in [Form 2434]*, and only after receiving a Quit Claim Deed for the IRS Property." Doc. 36 at 2 (emphasis added). Defendant does not controvert this fact. Doc. 38 at 3. However, as detailed below, the court finds the undisputed facts establish that the Johnson County sale was cancelled. And, Form 2434 recited the buyer will be responsible for paying delinquent property taxes "before the County sale," which was planned for November, but did not require payment "before November 2016." Doc. 32-1 at 1. So, the court declines to include as an undisputed fact any reference to defendant to paying such taxes "after the time" noted in Form 2434. Without any sale taking place, defendant's payments made in May 2017 still were paid "before the County sale."

[6]      The parties stipulated to the admissibility of this certificate in the Pretrial Order. Doc. 30 at 7.

[7]      The parties stipulated to the admissibility of this letter in the Pretrial Order. Doc. 30 at 7.

The only correspondence, documents, or emails that plaintiff received from the IRS at any time between the date of sale on October 6, 2016, and expiration of the 180-day redemption period in April 2016, was an untitled demand for interest, which plaintiff received approximately January 17, 2017, or shortly thereafter. This demand did not mention that the sale had occurred or that the redemption period had commenced. Plaintiff did not send any correspondence, documents, or emails to the IRS (other than any personal tax return or estimated tax filing) at any time during the redemption period. Plaintiff did not communicate orally (whether in person or over the phone) with any employee or representative of the IRS at any time during the redemption period about the Residence or the IRS auction of the Residence.

Between the date of sale and expiration of the 180-day redemption period, the IRS did not notify plaintiff the sale had occurred or that the redemption period had commenced. Between the date of sale and expiration of the 180-day redemption period, plaintiff did not learn the sale had occurred or that the redemption period had commenced.

### *Post-Sale Activity After the Redemption Period*

After the 180-day redemption period had expired, defendant surrendered the Certificate of Sale of Seized Property to the IRS. In exchange, the IRS issued her a quit claim deed to the Residence.[8] Defendant recorded the quit claim deed with the Johnson County, Kansas, Records & Tax Administration on May 15, 2017. After recording the quit claim deed, defendant went to the Johnson County, Kansas, Treasurer's office on May 17, 2017, and paid $16,682.40 for delinquent and then-current Kansas real property taxes owed on the Residence for years 2011, 2012, 2013, 2014, 2015, and 2016. Since then, defendant has paid the real property taxes on the Residence for 2017 and 2018, making a collective total of tax payments by defendant for years

---

[8] The parties stipulated to the admissibility of the quit claim deed in the Pretrial Order. Doc. 30 at 7.

2011 through 2018 of $21,722.75.  Defendant has not yet paid any amounts for the lien filed by the Kansas Department of Revenue.  That lien remains on the title to the property.

Defendant contacted counsel, who issued plaintiff a notice-to-quit the premises on May 17, 2017.  Defendant hand-delivered her counsel's notice-to-quit letter to plaintiff on May 17, 2017.[9]  The May 17, 2017, letter was the first time plaintiff knew that the sale was completed on October 6, 2016.

Plaintiff did not quit the Residence as requested in the letter.  So, defendant initiated an eviction action in the District Court of Johnson County, Kansas, titled *Deng v. Hattrup*, Case No. 17LA3672.  That court entered its judgment for possession in favor of defendant on July 26, 2017.  Plaintiff appealed the decision to the Kansas Court of Appeals, Case No. 118164.  The Kansas Court of Appeals affirmed the Johnson County, Kansas, District Court, in an unpublished opinion dated June 15, 2018.  Plaintiff filed a Petition for Review with the Kansas Supreme Court on September 11, 2018.  The Kansas Supreme Court denied the Petition for Review on April 29, 2019.[10]

The IRS sent plaintiff a Form 3074 letter dated July 25, 2017, enclosing (a) a Form 2436, Seized Property Sale Report, showing how sale proceeds were applied to unpaid taxes, (b) a Record 21, Record of Seizure and Sale, and (c) a Form 2434-B, Notice of Encumbrances Against or Interest in Property Offered for Sale.  The letter indicates the documents enclosed "provide a

---

[9]       The parties stipulated to the admissibility of this letter and enclosures in the Pretrial Order.  Doc. 30 at 7–8.

[10]       When the parties initially filed their cross-motions for summary judgment, the petition for review by the Kansas Supreme Court remained pending.  When the Kansas Supreme Court subsequently denied the petition, defendant filed her Motion to Supplement (Doc. 37) to reflect this development in the Johnson County, Kansas case.  Plaintiff did not file any objection to defendant's supplement to the uncontroverted statement of facts.  Also, the court properly may take judicial notice of this updated fact.  *See Tal v. Hogan*, 453 F.3d 1244, 1264, n.24 (10th Cir. 2006).  The court thus grants defendant's Motion to Supplement (Doc. 37).

7

complete record of the seizure and sale as required by Section 6340 of the Internal Revenue Code." Doc. 35-7 at 1.

### The Pretrial Order

Plaintiff asserts he was denied due process under the Fifth Amendment to the United States Constitution when the IRS failed to give him post-sale notice that the sale was complete and his redemption period had commenced. Plaintiff concedes he received notice of the sale before the sale took place, but he asserts this notice was insufficient because it did not include enough information to allow him to redeem the property after the sale, if the property indeed was sold at the scheduled sale. Plaintiff believes he has a due process right which "[a]t a legal minimum . . . includes receiving the name and last known address of the purchaser, and the amount of the sale, within a reasonable time after the sale is concluded." Doc. 30 at 13. Because he did not receive this notice, plaintiff contends he was denied his right to redeem the Residence under 26 U.S.C. § 6337.

The parties agree 26 U.S.C. § 6337 and federal regulations, procedure, and case law govern plaintiff's redemption rights. Doc. 30 at 2. Plaintiff also argues Kan. Stat. Ann. § 60-2414—which provides for a 12-month redemption period—and Kansas case law provide him additional redemption rights. *Id.* But, defendant disagrees and argues Kan. Stat. Ann. § 60-2414 does not apply here. *Id.*

Plaintiff seeks injunctive relief under Kan. Stat. Ann. §§ 60-901[11] and 60-906[12] for the quit claim deed issued by the IRS to defendant. He would like the quit claim deed declared void

---

[11]     This statute provides: "Injunction is an order to do or refrain from doing any particular act. It may be the final judgment in an action, and it may also be allowed as a provisional remedy."

[12]     This statute provides: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the petition or other document, the act or acts sought to be restrained; and shall be binding only upon the parties to the

or voidable and an opportunity to redeem the Residence. Alternatively, he would like the IRS sale results declared void or voidable. He also seeks quiet title relief under Kan. Stat. Ann. § 60-1002.[13] Plaintiff's requested relief hinges on a finding that his due process rights were violated or, alternatively, a finding that he is entitled to the 12-month redemption period established by Kansas law.

## II.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457, 1460 (D. Kan. 1995). When it applies this standard, the court "view[s] the evidence and make[s] inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1150 (D. Kan. 2012) (explaining that "[a]n issue of fact is 'genuine' if 'the evidence allows a reasonable jury to resolve the issue either way.'" (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Nahno-Lopez*, 625 F.3d at

---

action, their officers, agents, servants, employees, and attorneys, and upon those persons in concert or participation with them who receive actual notice of the order by personal service or otherwise . . . ."

[13]      This provision permits a person to bring a cause of action "claiming title or interest in personal or real property . . . against any person who claims an estate or interest therein adverse to him or her, for the purpose of determining such adverse claim." Kan. Stat. Ann. § 60-1002(a).

1283 (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)); *see also In re Urethane Antitrust Litig.*, 913 F. Supp. 2d at 1150 (explaining that "a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim." (citation omitted)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

The court applies this same standard to cross-motions for summary judgment. Each party bears the burden of establishing that no genuine issue of material fact exists and that it is entitled,

as a matter of law, to the judgment sought by its motion.  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).  Cross-motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another."  *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).  But where the cross-motions overlap, the court may address the legal arguments together.  *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

Finally, summary judgment is not a "disfavored procedural shortcut."  *Celotex*, 477 U.S. at 327.  Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Id.* (quoting Fed. R. Civ. P. 1).

### III.    Analysis

The facts here are not disputed, but both parties contend they are right on the law and thus should prevail.  The parties' legal arguments and analysis in their cross motions for summary judgment significantly overlap.  Indeed, plaintiff's response to defendant's motion directs the court to his own summary judgment motion.  *See* Doc. 36 at 2.  The court thus addresses the legal arguments together.

Defendant seeks summary judgment against all of plaintiff's claims.  She relies on four arguments.  *First*, defendant argues plaintiff is not entitled to any of the injunctive or quiet title relief sought because there was no due process violation.  Plaintiff also moves for summary judgment in his favor based on this due process issue, asserting he is entitled to prevail on his claims because he was denied due process and deprived of his opportunity to redeem the Residence.  *Second*, defendant argues the redemption period under 26 U.S.C. § 6337 cannot be extended, even for equitable considerations, so plaintiff's injunctive relief requesting an extension of time to redeem must be denied.  *Third*, defendant argues Kan. Stat. Ann. § 60-

2414(a) and its 12-month redemption period do not apply here. *Finally*, defendant argues the equitable relief—injunction and quiet title—sought by plaintiff should be denied because plaintiff "slumbered on [his] rights" and equitable relief is not available to those "who deliberately forego the opportunity to discover material facts." Doc. 30 at 15–16; *see also* Doc. 32 at 11. The court addresses each argument, in turn, below.

## A. Was plaintiff denied due process?

At the root of plaintiff's claims is the alleged due process violation. Defendant argues she deserves summary judgment against plaintiff's claims because plaintiff was not denied due process. Defendant contends the IRS conducted the sale in accordance with 26 U.S.C. §§ 6331 through 6344, 26 C.F.R. §§ 301.6331 through 301.6343, and the IRS Manual concerning sales. Defendant points out that none of these provisions require post-sale notice notifying the property owner the redemption period has commenced. Defendant further argues plaintiff has no constitutional right to post-sale notice because the procedures followed by the IRS—particularly Form 2434—provided plaintiff adequate notice of his redemption rights. Doc. 32 at 13. Defendant contends Form 2434 gave plaintiff "meaningful notice[] and opportunity to act" because it gave notice of the date, time, and place of the sale and advised that a 180-day redemption period would apply if the property was sold. Doc. 30 at 12. Plus, defendant points out, Form 2434 provided contact information for the IRS if plaintiff had questions about the sale or redemption process. *Id.* But, plaintiff did not attend the sale or use that contact information to determine if the sale had occurred. *Id.* Thus, defendant argues, plaintiff's due process rights were not violated. *Id.*

Plaintiff does not dispute that the IRS followed the procedures set out in the Internal Revenue Code, Code of Federal Regulations, and IRS Manual. And, plaintiff does not contest

that he received Form 2434 prior to the sale. But, plaintiff disagrees with defendant's contention that Form 2434 provided him adequate notice. Plaintiff argues that due process requires notice both before and after the sale. Doc. 34 at 10. He contends the Due Process Clause of the Fifth Amendment requires the IRS to provide the property owner "notice of the results of the sale, and the information which would allow Plaintiff to redeem the property, namely the name, address, and winning bid amount from the buyer." Doc. 36 at 2. The applicable statute allows for redemption after a sale "upon payment to the purchaser, or in case he cannot be found in the county in which the property to be redeemed is situated, then to the Secretary, . . . [of] the amount paid by such purchaser and interest thereon at the rate of 20 percent per annum." 26 U.S.C. § 6337. Because the statute contemplates redemption by paying the purchaser directly, plaintiff argues due process requires the IRS to provide notice after the sale with the identity and address of the of the purchaser and the final sale price. Doc. 34 at 2–3.

Plaintiff also argues that the IRS statutes and regulations are outdated and lack guidance about how to redeem. *Id.* at 3–4. The Internal Revenue Manual, Part 5, Collecting Process, gives more detail about the procedures followed, including post-sale paperwork that must be completed, but still does not require notice to plaintiff after the sale within a certain time frame. *Id.* at 4. And, plaintiff asserts, such post-sale notice "could easily be prepared by the IRS staff while working on the other documents." Doc. 34 at 10. Plaintiff argues that "fail[ure] to deliver any notice of the results of the sale . . . depriv[ed] him of the opportunity to redeem the property." *Id.* at 1. And, because he did not receive this notice, he argues the sale was void or voidable and the transfer of title to defendant inequitable.

The Pretrial Order explains that plaintiff received various notices from the IRS leading up to the October 6, 2016 sale and plaintiff "assumed he would continue receiving the notices

required after the sale." Doc. 30 at 9. When he was unable to attend the sale, he asserts that the IRS should have given him notice of the results, had the property been sold. Because he did not receive any notice after the sale, plaintiff assumed that the IRS had terminated the sale or was rescheduling the sale because no bidders appeared or because the minimum bid was not met. Doc. 30 at 10. While plaintiff recognizes Ms. Breuchaud's contact information was on Form 2434, he contends that contact information "is to dispute the minimum bid required . . . not to become a point of contact for the IRS." *Id.* Plaintiff claims he was denied due process because the IRS "is required to notify [plaintiff] (and other owners) following tax sales under due process, not the other way around." *Id.* And, plaintiff contends, "[s]hifting the burden to [plaintiff] to find out what happened at the sale is not supported by statute or case law." Doc. 30 at 9. Plaintiff moves for summary judgment on this issue as well—seeking a ruling that the sale is voidable and he is entitled to quiet title relief because his due process right was violated.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (considering whether an evidentiary hearing was required under the Due Process Clause of the Fifth Amendment before Social Security disability benefit payments could be terminated). "'(D)ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). To determine whether due process was violated, the court must consider and balance three factors. *See id.* at 335. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest,

including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

Defendant and plaintiff each analyze the *Mathews* factors in their respective summary judgment papers. The court considers these factors, below in subsection i, ii, and iii, to determine whether the procedures followed by the IRS were constitutionally adequate, or if due process required post-sale notice to plaintiff. This analysis convinces the court that the procedures followed were constitutionally adequate and no due process violation occurred.

### i. Private Interest Affected by the Official Action

The court first considers the private interest that will be affected. *Mathews*, 424 U.S. at 335. Here, plaintiff's home was foreclosed upon and he contends the existing IRS procedures failed to provide adequate notice of the sale and commencement of the redemption period, depriving him of his ability to redeem his property. Defendant does not dispute that redemption is a significant property right protected by the Due Process Clause of the Fifth Amendment. *See* Doc. 32 at 13; *see also Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 428 (2d Cir. 2011) ("We assume . . . a constitutionally protected property interest [exists] in [the] right to redemption from foreclosure."); *FDIC v. Morrison*, 747 F.2d 610, 614–16 (11th Cir. 1984) (explaining that statutory redemption right under Alabama law was "property protected by the [F]ifth [A]mendment" in a foreclosure action taken by the FDIC, but concluding that the FDIC had not deprived Morrison of any property right and thus no due process was owed); *In re Pontes*, 280 B.R. 20, 30–31 (Bankr. D.R.I. 2002), *aff'd* 310 F. Supp. 2d 447 (D.R.I. 2004) (holding that Rhode Island's statutory "right of redemption is a [significant] property interest" protected by the Fourteenth Amendment).

*In re Pontes* considered what due process is required under the Fourteenth Amendment for a city tax foreclosure sale. *In re Pontes*, 280 B.R. 20 (Bankr. D.R.I. 2002). There, the City of Providence had sold the debtor's home when he failed to pay his property taxes. *Id.* at 23. The applicable statutes required notice to the owner by certified mail that advised of the time and place of the sale, and that the owner could prevent the sale by paying overdue taxes. *Id.* at 24. But, the notice did not advise the debtor of his "statutory right to redeem the property, nor of the existence of or the procedures available to exercise the right redemption." *Id.* The debtor argued that the Due Process Clause of the Fourteenth Amendment required the city to provide him "meaningful notice of the right to redeem his property" and that the current notices required by statute had failed to do so. *Id.* at 23. So, debtor argued, the deed conveying the property to the tax sale purchaser should be declared void. *Id.*

The United States Bankruptcy Court for Rhode Island considered the three factors specified by *Mathews* to determine what due process required. For the first factor, the court concluded that "[b]ecause the right of redemption is considered a significant property interest it clearly is protected by the Fourteenth Amendment. This element is easily resolved in the Debtor's favor." *In re Pontes*, 280 B.R. at 32 (internal citations omitted). On appeal, the district court reviewed the *Mathews* factors de novo and agreed: "[T]he right of redemption is the *type* of property interest that deserves special attention because, at its core, the right of redemption implicates an individual's ability to retain his or her home." *In re Pontes*, 310 F. Supp. 2d at 455.

Here, the court similarly concludes that the right of redemption is a significant property interest and thus entitled to due process protection. In this case, the redemption right arises under federal law, 26 U.S.C. § 6337, and is entitled to protection under the Due Process Clause

of the Fifth Amendment. And, because the redemption right affects plaintiff's ability to retain his home, the court agrees with the parties that due process was owed here and this factor favors plaintiff.

But here, unlike *In re Pontes*, plaintiff actually received notice of his redemption rights before the scheduled sale and redemption period began. The debtor in *In re Pontes* received "bare notice of a scheduled tax sale" and the court refused to charge him with "constructive knowledge of the entire statute, including the right of redemption and how it is exercised." *In re Pontes*, 280 B.R. at 31–34. But, plaintiff in this case received far more. He received notice in August 2016 of his pre-sale and post-sale redemption rights, with references to the statutes containing these rights. *See* Doc. 32-1 at 2. This implicates the question whether the quality of this notice complied with the Due Process Clause of the Fifth Amendment. *See In re Pontes*, 310 F. Supp. 2d at 455. The next subsection thus addresses whether the notice given by the IRS in Form 2434 was sufficient to provide "meaningful notice" that comports with due process or if due process requires additional notice that the sale is complete with details about the purchaser. *See In re Pontes*, 280 B.R. at 32 ("The Due Process Clause requires *meaningful* notice of any procedure that deprives an individual of life, liberty or property." (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314–315 (1950))).

### ii. Risk of Erroneous Deprivation of Property

Next, the court considers the risk of erroneous deprivation of plaintiff's redemption rights through the procedures used and the probable value of additional procedural safeguards. *Mathews*, 424 U.S. at 335. As noted above, this is not a case like *In re Pontes* where no notice was provided. Instead, the question here turns on the adequacy of the notice given and whether additional, post-sale notice was required to comport with due process.

Defendant contends the existing procedures provided plaintiff meaningful notice and satisfied due process. Doc. 32 at 14. This is so, defendant argues, because plaintiff "had notice in advance of the sale as to the nature of his redemption rights if the property was sold, and advance notice that those redemption rights would expire if not exercised within 180 days after the sale." *Id.* And, defendant contends, plaintiff was told when and where the sale would take place and was given "contact information he could have utilized to answer questions he might have had concerning the sale (including the question of whether or not the sale occurred)." *Id.* Because due process requires notice of the *pendency* of an action, defendant asserts that plaintiff received timely, actual notice of his redemption rights. *Id.* at 14–15 (emphasis added). Post-sale notice that the sale was complete and thus that this sale had triggered plaintiff's redemption rights, defendant argues, is not constitutionally required where plaintiff had sufficient information to take action to redeem if he so chose, whether by attending the sale or contacting the PALS after the sale. *Id.* at 16–19.

Plaintiff, on the other hand, argues a second notice after the sale—with information about the results of the sale, including the name and address of the purchaser and the winning bid amount— was required to satisfy due process. Doc. 36 at 2; Doc. 34 at 9–10. Because he did not receive such notice in the days following the October 2016 sale, plaintiff contends he was deprived of his opportunity to redeem the Residence, and the transfer of title to defendant should be declared void or voidable. Doc. 36 at 2–3. He contends the notice of his redemption rights before the sale

> clearly identified the right to redeem for the amount of taxes owed prior to the sale, but is significantly lacking on post-sale redemption since it contains neither the purchaser's name, address, or final sale amount, nor could it reasonably be expected to contain such information unless someone preparing it had knowledge of the future.

Doc. 34 at 10.  So, he argues, due process requires, at a minimum, notice shortly after the sale providing this information, which could be provided while the IRS completes the other required paperwork from the sale.  *Id.*

Plaintiff also argues the existing statutes, regulations, and procedures are outdated.  Doc. 36 at 4.  He contends the Supreme Court's decision in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), discussed in detail below, has "significantly changed the procedures to be followed in tax sale notifications."  *Id.*  So, a "more extensive notice of his redemption rights" was required.  *Id.*

Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  When "assessing the adequacy of a particular form of notice, [the court] must 'balanc[e] the interest of the state against the individual interest sought to be protected . . . ."  *Oneida Indian Nation*, 665 F.3d at 428–29 (quoting *Jones v. Flowers*, 547 U.S. 220, 229 (2006)) (further internal quotations and citation omitted).  Due process requires "as much notice as is practicable to inform a [property owner] of proceedings against his property."  *Id.* at 429 (internal quotations omitted).  But, the "procedures used to guard against an erroneous deprivation of a protectible property . . . interest" do not have to be "so comprehensive as to preclude any possibility of error."  *Mackey v. Montrym*, 443 U.S. 1, 13 (1979).  Once requisite notice has been given, the individual whose property interest is at risk "can choose for himself whether to appear or default, acquiesce or contest."  *Mullane*, 339 U.S. at 314.

Considering the second *Mathews* factor, the *In re Pontes* bankruptcy court explained that due process requires *meaningful* notice, *i.e.*, notice that meets the "'reasonably calculated'"

standard set forth in the *Mullane* decision. 280 B.R. at 32 (quoting *Mullane*, 339 U.S. at 314). For a notice to qualify as reasonably calculated under all the circumstances, the notice should be "provided 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Rhode Island bankruptcy court determined that notice of the right to redeem must consist of *actual* notice (as opposed to constructive notice) and must be provided "*before* that right may be foreclosed." *In re Pontes*, 280 B.R. at 32–33. In the Rhode Island case, the debtor had received notice of the scheduled sale, but did not learn the property had been sold or that he had redemption rights until a year later when the purchaser instituted proceedings to foreclose his redemption rights permanently. *Id.* at 25. Under Rhode Island law, the redemption right existed "for at least one year following the tax sale, and thereafter until the tax sale purchaser files a notice of foreclosure to quiet title." *Id.* at 24. Once the purchaser filed the foreclosure petition, the right to redeem ended. *Id.* at 34.

Because the debtor did not receive actual notice of the availability of redemption rights until the right to redeem was virtually extinguished, the court concluded that the requisite meaningful notice to comport with due process was not provided. *Id.* at 33–34. Although the debtor technically could still redeem by opposing the foreclosure proceeding in court, due process was lacking because of the significant additional costs to redeem at this late stage. *Id.* at 34. The court explained, "the risk of forfeiture of property . . . [was] real, and unreasonably expose[d] the Debtor to the loss of . . . the place where he lives." *Id.* at 33. So, the court concluded, this "most relevant" *Mathews* factor favored the debtor and the city's notice failed to afford the debtor requisite due process. *Id.* at 32–34. As discussed in the next subsection, the

bankruptcy court recognized that the city easily could fix the deficient notice procedure by including notice of the redemption rights with the original tax sale notice. *Id.* at 34.

On appeal, the district court agreed this second *Mathews* factor favored a finding that due process was not provided for the debtor's redemption right. The district court explained that while the debtor had received notice of the right to redeem when "the petition to foreclose the right of redemption" was filed, this was not meaningful notice. *In re Pontes*, 310 F. Supp. 2d at 458. This notice did not provide due process because "by the time the taxpayer receive[d] this notice the right of redemption has become burdened with interest, penalties, attorneys' fees, and court costs associated with contesting the foreclosure petition." *Id.* And, waiting so long to notify the debtor of the right to redeem "effectively deprive[d] the taxpayer of the right itself." *Id.* The district court agreed that "advisory language regarding the right of redemption could, without any difficulty, be included in that [sale] notice." *Id.* at 459.

Here, the IRS did what *In re Pontes* suggested and included notice of plaintiff's redemption rights within the notice of the tax sale. And so, plaintiff actually received notice of his redemption rights with ample time to exercise those rights—*i.e.,* before the right to redeem was foreclosed.[14] But, plaintiff argues this notice was insufficient because it did not notify plaintiff, post-sale, that the sale was complete, or provide him all of the detail necessary for plaintiff to redeem the Residence. Plaintiff relies on *Mennonite Board of Missions v. Adams* and argues that the IRS's notice procedures are outdated, but the court does not find support in that case for plaintiff's position that post-sale notice is required. *See* Doc. 36 at 4.

---

[14]    Plaintiff argues *In re Pontes* supports his argument that he "was entitled to a more extensive notice of his redemption rights *after the sale*." Doc. 36 at 4 (emphasis added). But, as discussed in detail above, *In re Pontes* supports a finding that due process requires notice about the existence of redemption rights at a meaningful time. It does not support, however, a finding that *post-sale* notice containing the name and address of the purchaser and final purchase prices is required. Instead, it suggests the notice procedure followed by the IRS here may be constitutionally adequate.

In *Mennonite Board of Missions v. Adams*, the Supreme Court considered whether public notice of a tax sale was constitutionally adequate under the Due Process Clause of the Fourteenth Amendment. 462 U.S. 791 (1983). In that case, a property owner had mortgaged property to the Mennonite Board of Missions and the mortgage was recorded with the county. *Id.* at 792. When the property owner failed to pay taxes on the property, the county treasurer began foreclosure proceedings. *Id.* at 793. Indiana law required the county auditor to post notice at the courthouse, in newspapers, and provide notice to the owner by certified mail. *Id.* Indiana law did not require notice by mail or personal service to mortgagees. *Id.* The county treasurer held a public auction and sold the property to the highest bidder. *Id.* at 793–94. This bidder—Adams—secured a superior lien against the property during a two year redemption period, when the owner or any other lienholder could redeem the property. *Id.* Once the redemption period expired, if no one had redeemed the property, the purchaser could apply for a deed to the property. *Id.*

The redemption period expired and Adams applied for the deed. *Mennonite Bd.*, 462 U.S. at 793–94. The auditor ultimately executed the deed and Adams acquired the property in fee simple, free and clear of all other liens and encumbrances. *Id.* And, under Indiana law, Adams could initiate a quiet title action to the property. *Id.* The Mennonite Board was unaware that the property had been sold to Adams. *Mennonite Bd.*, 462 U.S. at 794. The original owner had continued to make mortgage payments to the Mennonite Board after the sale. *Id.* And, by the time the Mennonite Board learned of the sale—when Adams sued for quiet title—the ability to redeem had expired. *Id.* The Mennonite Board argued that "it had not received constitutionally adequate notice of the pending tax sale and of the opportunity to redeem the property following the tax sale." *Id.* at 795. The Supreme Court agreed that due process

required actual notice of the sale to the mortgagee, without addressing whether the mortgagee also was constitutionally entitled to notice of the right to redeem. *Id.* at 795, 798, 800 n.6.

The Supreme Court explained that under these circumstances, "notice by publication [is] not reasonably calculated to provide actual notice of the pending proceeding and [is] therefore inadequate to inform those who could be notified by more effective means such as personal service or mailed notice." *Mennonite Bd.*, 462 U.S. at 795 (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). The Court determined that the Mennonite Board, as mortgagee, "possesse[d] a substantial property interest that is significantly affected by [the] tax sale." *Id.* at 798. And, because "a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale"—*i.e.*, notice by publication is insufficient where the mortgagee is identifiable by looking at the publicly recorded mortgage. *Id.* Instead, due process required notice by mailing to the mortgagee's last known address or by personal service. *Id.* The less reliable forms of notice—public posting and notifying the owner—were "not reasonable where . . . an inexpensive and efficient mechanism such as mail service is available." *Id.* at 799 (internal citations and quotations omitted).

The Supreme Court also held that

> a mortgagee's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending. The latter was the information which the [County] was constitutionally obliged to give personally to the appellant—an obligation which the mailing of a single letter would have discharged.

*Id.* at 800 (internal citations and quotations omitted).

*Mennonite Board* stands for the proposition that due process requires notice reasonably calculated to inform the party whose interest is at stake of the pending proceeding. And, it concludes, notice of a pending tax sale is a constitutional obligation—even where knowledge of tax delinquency may make the ultimate sale and property deprivation less surprising. The kind

of notice required depends on the circumstances. But, *Mennonite Board* indicates notice by mail can meet the requisite reasonably calculated notice of the sale. *Mennonite Board* does not address whether notice of redemption rights is constitutionally required, and if so, what type of notice would suffice and at what stage of the proceedings it would be necessary.

As discussed above, in the court's analysis of the first *Mathews* factor, the court concludes that due process required notice of plaintiff's redemption rights. But, the court rejects plaintiff's argument that a more detailed *second* notice—sent after the tax sale—was required by the Due Process Clause of the Fifth Amendment. The second *Mathews* factor considers the risk of an erroneous deprivation of plaintiff's redemption rights through the procedures used, *i.e.*, by notifying plaintiff of his right to redeem on Form 2434 at the same time the IRS notified plaintiff about the sale.

Plaintiff is correct—the IRS cannot notify him before the sale of the post-sale redemption period in a manner that provides detailed information about the purchaser and sale price. But, due process does not require notice of every detail about every incremental step of the foreclosure process. Instead, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314 (emphasis added); *see also Mennonite Bd.*, 462 U.S. at 795 (explaining that "prior to an action which will affect an interest in life, liberty, or property" due process requires notice of the pendency of the action). Certainly, the court can imagine a post-sale notice of redemption rights that is constitutionally sufficient. *See, e.g.*, *Oneida Indian Nation*, 665 F.3d at 435 (concluding that post-sale notices of redemption rights received "well in advance of the redemption deadline" complied with due process). But,

that does not mean the pre-sale notice of redemption rights provided here failed to fulfill "the requirements of the Due Process Clause—notice and an opportunity to respond." *Id.* at 436.

The notice provided to plaintiff less than two months before the sale—the event that triggered the redemption period—was reasonably calculated under all the circumstances to apprise plaintiff both of the pending sale and commencement of his time-limited, post-sale redemption rights. *See* 26 U.S.C. § 6337(a) (explaining that the owner of any seized real property sold may redeem the property "at any time within 180 days after the sale"); *see also In re Hollar*, 184 B.R. 243, 249–250 (Bankr. M.D.N.C. 1995) (rejecting plaintiffs' arguments that the IRS failed to provide them notice of their redemption rights where they were informed of their redemption rights in the sale's notice); *cf. Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 739–42 (6th Cir. 2015) (concluding Federal Housing Finance Agency's compliance with Michigan foreclosure procedures satisfied the requirements of due process where Michigan law required notice of borrower's default to be sent by certified mail and this initial notice of default informed the borrower "of the number of days in the redemption period that will be available to the borrower if the property is eventually sold at a foreclosure sale," then subsequent notice of the date of the foreclosure sale was published in the newspaper and on the premises); *Weigner v. City of New York*, 852 F.2d 646, 648–52 (2d Cir. 1988) (holding that city satisfied the requirements of due process for a foreclosure proceeding when it sent notice by ordinary mail informing plaintiff of the commencement of the foreclosure action and that redemption was available up to a certain date, regardless whether plaintiff actually received the mail).[15] By

---

[15]  The article *Tax Liens, Tax Sales, and Due Process*, analyzes what notice may be constitutionally adequate where a foreclosure proceeding includes a post-sale redemption right, and supports the court's conclusion here that the notice provided was reasonably calculated under the circumstances. Frank S. Alexander, *Tax Liens, Tax Sales, and Due Process*, 75 Ind. L.J. 747, 779–82 (2000), available at https://www.repository.law.indiana.edu/cgi/viewcontent.cgi?article= 2148&context=ilj. When an enforcement procedure contemplates a public sale, followed by a statutory redemption period for a fixed period that commences with the sale and automatically expires if redemption is not made, the author suggests that notice provided at the outset of the proceeding is constitutionally

alerting plaintiff of his redemption rights *before* the 180-day period to redeem started, the IRS

afforded plaintiff "as much notice as is practicable" for the proceedings against his property.

*Oneida Indian Nation*, 665 F.3d at 429.  And, the sooner redemption can be made, the less

interest that accrues.  *See* 26 U.S.C. § 6337(b)(2) (post-sale redemption includes interest at the

rate of 20 percent per annum).  So, notice before the redemption period begins affords plaintiff

the opportunity to redeem at the earliest time possible to avoid the burden of accrued interest.

*See In re Pontes*, 310 F. Supp. 2d at 458.

Here, plaintiff had ample opportunity to preserve his property interests in the Residence

and his redemption rights.  He was afforded an opportunity to object to the government's judicial

levy on his property.  *See In the Matter of Tax Indebtedness of Scott G. Hattrup*, Case No. 15-

mc-219-CM (D. Kan. 2015), Doc. 20 at 2, 5 (granting government's petition for judicial

approval of levy upon the Residence after considering plaintiff's objections, both in writing and

after a hearing).  Plaintiff received the Notice of Seizure in April 2016, followed by the Notice of

Public Auction Sale in August of 2016.  This August 2016 notice specified the date and time of

the sale, as well as plaintiff's redemption rights before and after the sale.  If plaintiff planned to

redeem, but could not do so before the sale, he could have attended the sale to discern the

purchaser and purchase price.  Or, if he chose not to attend the sale, he could have contacted the

PALS to inquire how to redeem.  Plaintiff didn't take either one of these steps.  And, choosing

not to determine the status of the sale does not mean that the pre-sale Form 2434 notice did not

comport with due process.  *See Weigner*, 852 F.2d at 651 n.5, 652 (explaining that plaintiff,

---

adequate.  *Id.* at 779–80.  The "need to provide constitutionally adequate notice on multiple occasions" can be avoided because "all subsequent events flow automatically from" the sale.  *Id.* at 780.  As long as the interested parties received "adequate notice at the commencement of the proceedings" of the "statutory course of events" this "should constitute adequate notice of the entire proceeding, with no additional *constitutional* notice requirements."  *Id.* at 780; *see also id.* at 782 ("[S]o long as the redemption period is self-executing and notice of the event is of public record, notice given only once still constitutes sufficient notice.").

aware of her tax delinquency, "could easily have contacted the City at any time to determine the status of her property and to take steps to protect it" so "additional written notice of deadlines to avoid foreclosure was unnecessary" once the "constitutional obligation to use notice reasonably calculated to inform interested parties" was given). The IRS provided notice before the action affecting plaintiff's redemption rights and afforded plaintiff an opportunity to present his objections by giving him the time and place of the sale and the PALS contact information. "[I]t is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right." *In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995).

The United States District Court for the Eastern District of New York considered a notice argument analogous to plaintiff's argument here that plaintiff should not face the burden to find out what happened at the scheduled sale, though the court ultimately concluded the statute of limitations barred the claims. *Evans v. IRS*, No. 89 C 1920, 1989 WL 149174, at *1–2 (E.D.N.Y. Nov. 17, 1989). The plaintiffs in *Evans* argued the IRS did not provide proper notice of the sale and they thus were deprived of due process and denied the right to redemption under 26 U.S.C. § 6337. *Id.* at *2. The IRS had mailed the notice of public sale to plaintiffs in February of 1981, which advised the sale was scheduled for March 1981, and also posted notice of the sale in newspapers and at local establishments. *Id.* at *1. Too few bidders appeared for the sale, so the sale was adjourned until April 1981. *Id.* Notice of the rescheduled sale was published in the same newspapers and local establishments, though no additional mailed notice was given to plaintiffs. *Id.* When plaintiffs did not redeem the property within the statutory redemption period, the IRS transferred the quitclaim deed to the purchaser. *Id.*

The court rejected plaintiffs' arguments that they had not received notice required by due process and thus their right to redeem was lost. *Evans*, 1989 WL 149174, at *2. The court noted that "the IRS gave the requisite notices of seizure and sale," but plaintiffs never attempted to redeem the property within the redemption period after the later sale date. *Id.* So, the court concluded, plaintiffs "were not damaged even if they did not get formal written notice of that later sale date." *Id.* But, because the statute of limitation had run, the court also noted that it "need not rest its decision on this ground." *Id.*

Similarly, here, the undisputed facts establish plaintiff received notice of the pending sale and that he possessed redemption rights. But, he made no effort to learn what happened at the sale or redeem the property within 180 days after the sale. The court is not persuaded by plaintiff's arguments that he was deprived of due process because he assumed the sale had not occurred but admittedly made no efforts to verify his incorrect assumption. *Cf. Taylor v. Slick*, 178 F.3d 698, 701–704 (3d Cir. 1999) (holding plaintiff was not denied due process where plaintiff was provided notice of the original sale, the original scheduled sale time was rescheduled orally, then the land subsequently sold on the rescheduled sale date, because the debtor's "voluntary absence" did not deprive him of the ability to bid on the property).

The court also must consider the probable value of additional safeguards. *Mathews*, 424 U.S. at 335. An additional notice to plaintiff, post-sale, with more information about the sale results and how to redeem might have made it easier for plaintiff to redeem. But, the risk here is that plaintiff was erroneously deprived of his redemption rights—the protected interest—and making sure plaintiff was aware this property interest was at risk. The value of giving a second notice *after* the October 6, 2016 sale that advised redemption is available for 180 days from that sale date, would not materially reduce the risk that plaintiff would be erroneously deprived of

this right because plaintiff already had received a notice in August 2016 informing him of the same sentiment—the sale date is October 6, 2016 and redemption is available for 180 days following the sale. *See Weigner*, 852 F.2d at 650–51 ("Even if beneficial, means of notice beyond those reasonably calculated to reach interested parties are not required by due process in the context of foreclosures."). Either form of notice is sufficient to apprise plaintiff of the fact that his right to redeem would expire 180 days from October. In the event the sale had not occurred, like plaintiff assumed here, the expiration of plaintiff's redemption right also would be postponed. But, plaintiff still received requisite notice that his redemption right was at risk and expected to expire 180 days after October 6, 2016. *See id.* at 652 (rejecting plaintiff's argument that notice was constitutionally insufficient "because she was never informed of entry of the foreclosure judgment or of the imminent lapse of her remedies" and holding that "[o]nce the City sent" notice that foreclosure proceedings had been commenced, "it was not required to send additional notices as each step in the foreclosure proceeding was completed or when each of the available remedies was about to lapse" because due process "only requires notice of the pendency of the action and an opportunity to respond" (internal quotations and citation omitted)).

And, other means existed for plaintiff to determine the status of his redemption rights. Form 2434 provided enough information for plaintiff to take steps to redeem if he so chose. It informed plaintiff in simple, straightforward words that the sale was scheduled for October 6 and the sale would trigger the 180-day redemption period. Doc. 32-1 at 1–2 (citing verbatim 26 U.S.C. § 6337(b)). And, it provided the PALS's name, phone number, and gave an "Address for information about the sale." *Id.* at 1. Plaintiff claims he was unable to attend the sale, but he doesn't dispute he received the Form 2434 notice. And he never provides any admissible evidence that he was unable to call the PALS or use the address he was given. Other delinquent

taxpayers planning to redeem their homes after receiving notice that their property was at risk may have attended the sale, or sent someone to report back the results if they were not able to attend, or called the PALS after the sale. But, plaintiff simply assumed it never was completed. The value of an additional post-sale notice confirming the sale results does not nullify the conclusion that the initial notice informed plaintiff of his redemption rights. It was reasonably calculated to provide constitutionally adequate notice under the circumstances. *See Weigner*, 852 F.2d at 651 (concluding risk that notice sent by mail would not arrive was an acceptable risk where the delinquent property owner had received other bills and letters from the city "apprising her of her delinquency" because "a person in [such a property owner's] position can reasonably be expected to know that foreclosure is imminent and to take the steps necessary to protect her interests," so mailed notice was "reasonably calculated to inform the parties affected" and satisfied due process); *id.* at 651 n.5, 652 (explaining that plaintiff, aware of her tax delinquency, "easily could have contacted the City at any time to determine the status of her property and take steps to protect it" so "additional written notice of deadlines to avoid foreclosure was unnecessary" once the "constitutional obligation to use notice reasonably calculated to inform interested parties" was given).

The court concludes meaningful notice was provided to plaintiff here. Form 2434 provided the quality of notice required by the Due Process Clause of the Fifth Amendment, so a second, post-sale notice was not constitutionally required. And, the second *Mathews* factor heavily favors defendant because the of an erroneous deprivation was low where plaintiff was provided actual notice of the sale and his redemption rights before those rights expired. Plaintiff simply failed to take any steps to preserve his rights.

### iii.  Government's Interest

Finally, the court considers "the appropriate due process balance," taking into account the government's interest—*i.e.*, "the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right," a second, post-sale notice that the redemption period has commenced.  *Mathews*, 424 U.S. at 335, 347.  When addressing the second factor, above in part ii, the court concluded that the initial notice provided to plaintiff satisfied constitutional due process requirements for plaintiff's redemption interest.  The court thus need not address this third factor in great detail because it already has determined that the procedures used sufficed to provide plaintiff due process before his property interests were terminated.  Still, the court briefly summarizes the parties' arguments about this third factor and whether the IRS procedures deprived plaintiff of his right to redeem because they did not include post-sale notice with detailed information about the purchaser and purchase price.

Defendant argues imposing a burden on the IRS to send an additional post-sale notice is unwarranted.  Doc. 32 at 19–20.  Defendant points out that in many cases, a delinquent taxpayer intending to redeem secures the information this notice would provide by attending the tax sale.  And, defendant contends, requiring an additional notice as a constitutional right would give rise to litigation, similar to the cases that often have arisen about the adequacy of sale notice.  Plus, defendant argues, claims about the sufficiency of post-sale notice would create difficulties because the redemption period is finite and courts cannot extend it.  But, pre-sale notice alleviates these issues because any defect in notice can be corrected by rescheduling the sale.  And, defendant asserts, if the court were to determine that post-sale notice is a constitutional right, the validity of a number of pending and past tax sales would be called into question.

Plaintiff argues that requiring post-sale notice would not unreasonably burden the government. Doc. 34 at 10–11. He points out that the IRS already must provide certain documentation to the purchaser that includes detail about the sale price and the owner's redemption rights. *Id.* And, he contends the Internal Revenue Manual requires the PALS to complete certain forms within two weeks of the sale, and it would not be difficult provide quick, post-sale notice to the owner as well.[16] *Id.* at 11.

"Financial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision. But the Government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources is a factor that must be weighed." *Mathews*, 424 U.S. at 348. "The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and an opportunity to meet it." *Id.* (internal citations and quotations omitted).

Analyzing the third *Mathews* factor, the *In re Pontes* bankruptcy court considered whether the City of Providence "would be unreasonably burdened by requiring it to provide

---

[16]    Plaintiff's brief also argues, the "IRS has sent . . . letters notifying taxpayers of their redemption rights in the past. Sending letters to some taxpayers and not to others is disparate treatment and violative of the Equal Protection Clause of the Fourteenth Amendment." Doc. 34 at 11 (citing *Howard v. Adle*, 538 F. Supp. 504, 506 (E.D. Mich. 1982)). Plaintiff did not assert an equal protection claim in the Pretrial Order, however, and the court thus does not consider it. *BioCore, Inc. v. Khosrowshahi*, 41 F. Supp. 2d 1214, 1231 (D. Kan. 1999) (holding that pro se party abandoned claims not found in the Pretrial Order). Moreover, the idea that the government violated the Equal Protection Clause by doing more than the Constitution requires in some instances but not others is, at best, a novel view of equal protection jurisprudence.

In *Howard*, the IRS attempted to notify plaintiffs of a scheduled sale by mail, but the mail was returned unclaimed. 538 F. Supp. at 506. Plaintiffs admitted, however, they had prior knowledge of the sale. *Id.* After the sale and before the redemption period expired, the IRS notified plaintiffs of their right to redeem, indicating the redemption period would expire on October 15. *Id. Howard* does not address whether the notice of sale sent to plaintiffs, which was returned unclaimed after several attempts at delivery, also included notice of those plaintiffs' redemption rights. *See Howard*, 538 F. Supp. at 506. And, the *Howard* court went on to conclude that, although the redemption letter indicated October 15 as the last day to redeem, the right to redeem actually had expired on October 14 based on the statutory redemption period calculated from the sale date. *Id.* at 509. So, plaintiffs' attempt to redeem the land on October 15 could not be honored because the court "lack[ed] the power to extend the statutory period, even for powerful equitable considerations." *Id.* at 509.

notice of the right to redeem at some point during a tax sale procedure." *In re Pontes*, 280 B.R. at 34. The court recognized that the city easily could fix the notice procedure without any unreasonable burden. *Id.* Indeed, it could place the statutory redemption language "in the original tax sale notice . . . . Not even additional postage would be required." *Id.*

In this case, the IRS has done precisely what *In re Pontes* suggested—it has included notice of plaintiff's redemption rights within the same form it used to provide plaintiff notice of the sale. This conserves taxpayer resources and minimizes administrative burden by providing actual notice of the sale and the redemption rights together. And, this notice is provided before those rights are foreclosed.

The financial and administrative burden of requiring a second, post-sale notice with more information about how to redeem is difficult to estimate. At first blush, an additional mailing to a delinquent taxpayer with details about the sale does not seem overly burdensome. *See*, *e.g.*, *Mennonite Bd.*, 462 U.S. at 800 (describing notice by mail as a "relatively modest administrative burden"); *Mullane*, 339 U.S. at 319 ("[T]he mails today are recognized as an efficient and inexpensive means of communication."). This is not a case where the cost of the procedure itself would impose a burden as substantial as the burden in *Mathews v. Eldridge*. *See* 424 U.S. at 347 (discussing how the "money and administrative burden would not be insubstantial" if a hearing was required before disability benefits could be terminated and considering the incremental cost of additional hearings, the "expense of providing benefits to ineligible recipients pending decision," and the ability to recover undeserved benefits if the hearing determined the termination of disability benefits was appropriate).

But, as noted above, actual notice *before* the sale puts the taxpayer in the best position to redeem before the amount required to redeem includes accrued interest at a rate of 20 percent. It

33

also place the government in a position to collect the taxes owed at the earliest opportunity. And, the redemption period is triggered upon the sale itself. So, notice of the redemption rights provided with the notice of the sale is reasonably calculated to give plaintiff notice that his property rights are in jeopardy and provides an opportunity to preserve them. The fact that this plaintiff did not take steps to preserve his redemption rights does not mean the pre-sale notice failed to provide due process. Plaintiff could have preserved his opportunity to redeem by, for example, attending the sale or contacting the PALS. And thus, an additional fiscal and administrative burden of a second, post-sale notice does not favor plaintiff here.

In sum, after considering all three *Mathews* factors, the court concludes plaintiff does not have a constitutional right to post-sale notice of his redemption rights under the circumstances presented here. The existing notice procedures provided plaintiff were constitutionally adequate—*i.e.,* reasonably calculated under all the circumstances—to inform plaintiff of his redemption rights and provide him the opportunity to preserve these rights. The Form 2434 notice provided plaintiff the due process the Fifth Amendment requires. The court thus denies plaintiff's motion for summary judgment seeking a ruling that he was denied due process and deprived of his opportunity to redeem the Residence. The injunctive and quiet title relief sought by plaintiff on the grounds that he was denied due process are denied as a matter of law. And, the court grants summary judgment against plaintiff's claims stemming from the alleged due process violation.

## B. Redemption under 26 U.S.C. § 6337

Plaintiff claims he was denied his right to redeem the Residence under 26 U.S.C. § 6337. This claim is tied to his argument that he had a due process right to notice of the results of the

sale of the Residence. Doc. 30 at 13 (claiming plaintiff was denied his right to redeem "due to lack of notice from the IRS after the sale").

Defendant argues the court does not have the power to extend the statutory redemption period, even if equitable considerations existed, though she contends no equitable reason exists to provide an additional opportunity to redeem here.

As discussed above in Part III.A., the court already has concluded that plaintiff received adequate notice of his redemption rights and was not denied due process. And, regardless, the court does not have the power to extend the redemption period. *See Babb v. Frank*, 947 F. Supp. 405, 406–07 (W.D. Wisc. 1996) (explaining that courts construe redemption statutes favorably to owners because of "the harsh consequences of losing one's property," but because redemption is a statutory right the court cannot "make any exceptions not made in the statute" even "to reach what the court believes to be the proper equitable result" (internal quotations and citations omitted)). The court previously determined, in its Memorandum and Order dated June 29, 2018, that:

> [Tile 26 U.S.C. § 6337] governs the redemption of property that the government has levied upon to collect unpaid taxes. It is well established that "the broad equitable powers of the federal courts do not include the power to extend time for redemption under the internal revenue laws." *Anselmo v. James*, 449 F. Supp. 922, 926 (D. Mass. 1978); *see also Virdi Props., Inc. v. United States*, No. 94-2060-CIV-DAVIS, 1995 WL 382694, at *2 (S.D. Fla. Feb. 27, 1995) ("Vicknair's claim of reliance on the June 9, 1994 letter from the Internal Revenue Service is not persuasive since this Court is without power to extend the statutory redemption period under the statute governing redemption of real estate following a sale, even for powerful equitable considerations."); *Howard v. Adle*, 538 F. Supp. 504, 508 (E.D. Mich. 1982) ("This Court simply lacks the power to extend the statutory period, even for powerful considerations."); *Ballard v. United States*, 20 A.F.T.R.2d 5476 (D. Col. 1967) ("The Court does not have the power to extend the time period for redemption under Section 6337(b)(1) of the Internal Revenue Code.").

Doc. 20 at 9.

Thus, any request for relief asking the court to reopen the statutory redemption period under 26 U.S.C. § 6337 is denied. The record before the court also does not support plaintiff's quiet title claim or a declaration that the IRS sale results or quit claim deed issued to defendant are void or voidable. Summary judgment is therefore granted to defendant on those claims.

### C. Redemption under Kan. Stat. Ann. § 60-2414(a)

Plaintiff explains in the Pretrial Order that he believes he has a right to a longer redemption period under Kansas law before title should have transferred to defendant. He cites Kan. Stat. Ann. §60-2414(a), which provides for a 12-month redemption period. He contends this post-sale redemption period applies because the superior state and county tax liens remained against the Residence when it was sold. Doc. 30 at 11, 14; Doc. 36 at 4. Because these liens took priority over the IRS lien, he contends the IRS sale didn't eliminate these state law rights. Doc. 30 at 11. Instead, plaintiff contends, Kansas law provides "an additional layer of protection over that provided by federal law" and the longer redemption period should be made available to plaintiff. *Id.* at 14.

Plaintiff also argues that defendant adversely affected plaintiff's redemption rights under Kansas law by interfering with the scheduled sale by Johnson County. Doc. 36 at 3. By requesting the November sale be cancelled and then waiting until May 2017 to pay to satisfy the liens held by the Johnson County Treasurer—when her quit claim deed could be recorded— plaintiff asserts defendant interfered with his right to the longer 12-month redemption period under Kan. Stat. Ann. § 60-2414(a). Plaintiff asserts that defendant paid the county taxes as "part of transferring title to her," so, plaintiff's right to the 12-month redemption period

applies.[17]  Doc. 30 at 11.  And, plaintiff argues, defendant does not have "clean hands" because

of her interference.  Doc. 36 at 3.  So, plaintiff contends, defendant's filing of the quit claim deed

and acquiring title merely makes her a tenant in common with plaintiff, not the sole owner of the

property.  *Id.*  Plaintiff's position is that these actions by defendant support an injunction

permitting this longer redemption period and a judgment declaring the title that was transferred

to defendant via the quit claim deed is void or voidable.  Plaintiff also points out that defendant

has not yet paid the Kansas Department of Revenue delinquent taxes.

Defendant, however, moves for summary judgment against plaintiff's contention that

Kansas law affects plaintiff's redemption rights here.  She argues Kan. Stat. Ann. § 60-2414(a)

and its 12-month redemption period have no applicability here.[18]  Doc. 32 at 16–18.  And,

---

[17]     Plaintiff finds significance in the fact that defendant paid the Johnson County taxes around the time she acquired the quit claim deed, rather than paying the taxes back in November 2016.  Instead, she arranged to have the Johnson County sale (schedule for November 2016) cancelled.  Plaintiff does not address what he believes would have happened had defendant paid the delinquent taxes before the scheduled sale, and before defendant received the quit claim deed.  Indeed, Form 2434 indicated that the buyer would be responsible for paying delinquent property taxes to the county before the sale.  Doc. 32-1 at 1.  Had defendant paid the taxes owed in November 2016, as opposed to May 2017, surely the Johnson County sale would have been cancelled.  The court does not find the timing of defendant's payment significant in determining whether plaintiff was entitled to a longer redemption period under Kansas law.  And, as explained below, the deed transferred all ownership to defendant.  The Johnson County taxes were paid by defendant two days after recording the quit claim deed with the county, but this payment was not a requirement for title to transfer to defendant.

[18]     Defendant also points out that a different statute may apply to the county sale, had it occurred.  Under Kan. Stat. Ann. § 79-2301, if real estate taxes are not paid the real property becomes subject to sale.  If the taxes remain unpaid, the county treasurer sells the real estate to the county "for the amount of the delinquent taxes and legal charges due" on the real estate.  Kan. Stat. Ann. §§ 79-2303; 79-2306.  But, such property continues to be taxed.  Kan. Stat. Ann. § 79-2319.  Kan. Stat. Ann. § 79-2401a(b)(2) provides for a three year redemption period for homesteads in Johnson County that are sold to the county to satisfy amounts owed to the county treasurer.  After this redemption period expires, the real estate is "disposed of by foreclosure and sale under Kan. Stat. Ann. §§ 79-2801– 79-2812 (Judicial Foreclosure and Sale of Real Estate by County).  *Id.* § 79-2401a(d).  In a judicial foreclosure for real estate taxes, redemption is permitted "before the day of sale."  Kan. Stat. Ann. § 79-2803.  The real estate may be redeemed by "any person interested in [the] . . . real estate as owner or holder of the record title."  *Id.*

     After review of the Johnson County, Kansas District Court public records, it appears an action against plaintiff was filed by the Board of County Commissioners of Johnson County, Kansas on June 6, 2016, but was dismissed in March 2017 for lack of prosecution.  *Bd. of Cty. Comm'rs of Johnson County, Kan. v. Hattrup*, No. 16LA04466 (Johnson Cty., Kan. District Court 2016).

defendant asserts, her actions in requesting the sale be cancelled and waiting to pay the county taxes were justified and do not support a finding that the quit claim deed should be declared void or voidable. Doc. 38 at 4. She asserts that the IRS sale documents explained that she would be repaid the purchase price, with interest, if plaintiff redeemed the property. But, these documents did not indicate how she would be reimbursed if she paid the debt tied to the county or state liens and then plaintiff redeemed. *Id.* And, she argues, plaintiff has cited no law supporting his arguments that the cancellation of the Johnson County sale was unjust, or that plaintiff retains some sort of legal interest or right to redeem the Residence because of the state and county liens. *Id.* Finally, as discussed in more detail in the next section, defendant argues plaintiff's attempts to implicate the state statutory redemption period are a request for the court "to use its equitable powers to extend the redemption time," which the court is without power to do.

The court agrees with defendant that the Kansas law redemption period is inapplicable here. Kan. Stat. Ann. § 60-2414(a) provides that the owner of real property "sold under execution" may redeem the property "at any time within 12 months from the day of sale, for the amount paid by the current holder of the certificate of purchase" together with interest at the rate provided by statute, and certain expenses, costs, and taxes. Under Kansas law, an execution "is a direction to an officer to seize any nonexempt property of a judgment debtor and cause it to be sold in satisfaction of the judgment." Kan. Stat. Ann. § 60-2401(a). Kan. Stat. Ann. § 60-2410 governs a state sale of real property under an execution.

On a straightforward application, plaintiff's argument that any 12-month redemption period should apply fails because no property interest ever was sold under those Kansas laws. Instead, the Residence was seized and sold under federal law, as provided in 26 U.S.C. §§ 6331 and 6335, so that the United States could collect taxes owed to it. But, as Form 2434 explained,

the Residence remained subject to the liens of the Johnson County Treasurer and Kansas Department of Revenue when it was sold.

Title 26 U.S.C. § 6338 makes it clear that the deed conveying title to the purchaser after such a sale shall be executed "in accordance with the laws of the State in which such real property is situated pertaining to sales of real property under execution" if the real property is "not redeemed in the manner and within the time provided in section 6337." This statute provides for a transfer of title that comports with Kansas law if the Residence was not redeemed after the IRS sale. But, the statute is explicit that the federal redemption period applies before such title is transferred. The statute also addresses the transfer of ownership:

> If the proceedings of the Secretary as set forth have been substantially in accordance with the provisions of law, such deed shall be considered and operate as a conveyance of all the right, title and interest the party delinquent had in and to the real property thus sold at the time the lien of the United States attached thereto.

26 U.S.C. § 6339(b)(2). So, if the sale and redemption procedures were conducted lawfully, all of plaintiff's right, title, and interest in the property was conveyed to defendant when the quit claim deed was executed.

Plaintiff argues the IRS procedures did not provide plaintiff due process, and thus were not lawfully conducted. But, the court already has concluded that no due process violation occurred here. Plaintiff did not present any other argument that the sale procedures were unlawful. Consequently, when the deed was executed, all of plaintiff's interest in the property was transferred to defendant. Defendant acquired ownership of the Residence subject to the Johnson County Treasurer and Kansas Department of Revenue liens. And, while any of those liens remain outstanding, the Residence is a risk of being subject to foreclosure proceedings to satisfy those liens. But, any redemption period permitted by those proceedings—if they are initiated to satisfy the taxes still owed—now belongs to defendant as owner of the Residence.

*See* 26 U.S.C. § 6339(b)(2) (deed operates as conveyance of all of plaintiff's right, title and interest in the real property to defendant); Kan. Stat. Ann. § 60-2414(a) (permitting redemption by the owner of property sold under execution); Kan. Stat. Ann. § 79-2401a(ab), (b)(2) (permitting redemption by any owner or holder of the record title or any mortgagee); Kan. Stat. Ann. § 79-2803 (permitting redemption by any owner or holder of the record title or any mortgagee); *see also In re Hollar*, 184 B.R. 243, 251 (Bankr. M.D.N.C. 1995) (denying plaintiff's quiet title action and granting summary judgment to defendants as a matter of law where tax sale was conducted substantially in accordance with the provisions of law and thus title had been transferred and plaintiffs no longer had an ownership interest in the property); *Babb v. Frank*, 947 F. Supp. 405, 407 (W.D. Wisc. 1996) (explaining that tax sale purchaser does not secure title until the tax sale purchaser exchanges the certificate of sale for a deed after the statutory redemption period has expired); *cf. In the Matter of the Application of SBA for Exemption from ad Valorem Taxation in Meade Cty., Kan.*, 797 P.2d 879, 605–08 (Kan. Ct. App. 1990) (explaining a purchaser at a foreclosure sale has "equitable interest" in the real estate, but the "legal title" or ownership does not exist until the redemption period has expired).

Indeed, plaintiff cites no law supporting his position that a Kansas state law redemption period should apply following a sale conducted under federal law, whether as a matter of right or because it would be equitable. Nor has plaintiff cited any authority to support a finding that he has any remaining interest in the Residence. And, the case law supports defendant's argument that no extended redemption period is available here, regardless whether a longer redemption period would have applied if the sale had been conducted on the state level.

In *United States v. Montgomery*, our court considered whether state statutory redemption rights should apply when the United States foreclosed "on a mortgage given by defendants to

secure a loan by the Small Business Administration." 268 F. Supp. 787, 788 (D. Kan. 1967). The government instituted foreclosure proceedings under federal law, 28 U.S.C. § 2001, which did not provide for a redemption period. *Id.* But, plaintiffs argued the then 18-month redemption period under Kan. Stat. Ann. § 60-2414 should apply. *Id.* The court held that "state redemption rights do not apply to judicial foreclosures in federal courts of mortgages held by federal agencies." *Id.*

The *Montgomery* court explained that state law doesn't apply to a foreclosure proceeding governed by federal law, unless Congress or the court "adopt[s] the local rule to further federal policy." *Montgomery*, 268 F. Supp. at 788–89 (describing the holding in *United States v. View Crest Garden Apartments, Inc.*, 268 F.2d 380 (9th Cir. 1959)). While "[s]tate law may be adopted, if it is an appropriate means to implement and fulfill federal policies," the court concluded that applying the state statutory redemption period would impede federal policy and the government's "legitimate interest . . . in uniform and effective remedial rights." *Id.* at 789–90. The court cited the government's examples of how the long state redemption period would impede its foreclosure remedy, including that "[i]f the United States succeeds in selling the property to third parties subject to the redemption rights in the mortgagor, the sale price is greatly reduced since possession cannot be given." *Id.* at 790.

The federal law governing the foreclosure proceedings at issue in *Montgomery* permitted the sale to be made "'upon such terms and conditions as the court directs.'" *Montgomery*, 268 F. Supp. at 790 (quoting 28 U.S.C. § 2001). The court noted that redemption rights were provided by statute for non-judicial sales under levy, citing 26 U.S.C. § 6337(b), but that 28 U.S.C. § 2001 did not contain a redemption right. Because the applicable statute provided flexibility to the court, the court concluded that "although defendants are not entitled to the Kansas statutory

eighteen month period of redemption, they are entitled to an equitable period of time in which to redeem" and allowed a sixty day period from the date of the sale for redemption. *Id.*

Here, the seizure and sale of the Residence were effectuated under federal law, not Kansas law, and no reason or authority exists for the court to adopt a longer redemption period than federal statute allows. Such an additional redemption period would directly conflict with the redemption period adopted by Congress, and would not provide a means to fulfill federal policy. Instead, it would impede federal policy and the IRS's "legitimate interest . . . in uniform and effective remedial rights" and securing a purchase price that satisfies the debt owed to the United States. *See id.* at 789–90; *see also* Myers, *Construction and Application of § 6337(b) of Internal Revenue Code of 1954 (26 U.S.C.A. § 6337(b)), providing for redemption of real estate after tax sale*, 12 ALR Fed. 979, § 2[b] (1972) (explaining that "[p]rior to 1966, § 6337(b) and predecessor statutes had provided a 1-year redemption period for redemption of real estate after a federal tax sale" but Congress reduced this period stating that "while a reasonable period of time for redemption is desirable, nevertheless a long redemption period tends to unnecessarily depress the price which potential purchasers are willing to bid for property at tax sales" (internal citation omitted)). *Cf. Title Ins. Co. of Minn. v. IRS*, 963 F.2d 297, 301 (10th Cir. 1992) (considering foreclosure proceedings conducted under Colorado law by senior lender, where IRS held junior federal tax liens, and holding that federal statute that provided the IRS 120 days from the date of the sale to redeem property preempted state statute with 75 day redemption provision, because where a state statute conflicts with a federal statute, federal preemption under the Supremacy Clause of the United States Constitution applies); *United States v. Victory Highway Village, Inc.*, 662 F.2d 488, 498–99 (8th Cir. 1981) ("While Minnesota law provides a statutory right of redemption, that enables a party to regain property sold after foreclosure . . . state redemption

statutes are not applicable to foreclosure of federally held or insured loans . . . ."); *United States v. Einum*, 821 F. Supp. 1283, 1283–84 (W.D. Wis. 1992), *aff'd* 992 F.2d 761 (7th Cir. 1993) (holding that Wisconsin law's one-year redemption period did not apply to mortgage foreclosure action by United States, where United States was foreclosing on a loan made to defendants through the Farmers Home Administration because "such foreclosures are governed exclusively by federal law" and explaining that adopting state law to add a redemption period that did not otherwise exist under federal law would hinder the need for national uniformity and make the program more difficult to administer); *United States v. Am. Nat'l Bank & Tr. Co.*, 573 F. Supp. 1319, 1321–22 (N.D. Ill. 1983) (explaining that federal law, not Illinois law "governs the remedies under FHA insured or HUD mortgages" and only "when consistent with federal policy and when federal law is silent on an issue is state law to be applied."); *In re Hollins*, 150 B.R. 53, 54 (Bankr. D. Or. 1993) (explaining that debtor was not limited to recovering property by redeeming property within applicable state law's redemption period because federal bankruptcy law provided the right to cure the default as an alternative means to recover the property and "[t]o the extent the federal law changes the result that would obtain under state law, state law must yield" because of federal preemption).

In sum, the court concludes the Kansas statutory redemption periods do not apply here because the Residence was sold under federal law and federal law explicitly provides for a 180 day redemption period. The court thus grants summary judgment against plaintiff's claims for injunctive relief declaring the quit claim deed void or voidable and seeking an additional opportunity to redeem the Residence. Also, plaintiff's claim seeking to quiet title is denied as a matter of law because all of plaintiff's right, title, and interest in the Residence was transferred to defendant as provided in 26 U.S.C. § 6339(b)(2).

### D. Equitable Relief

Defendant's final argument for summary judgment against plaintiff's claims is that the injunctive and quiet title relief sought should be denied because plaintiff did not take any action to learn whether the sale occurred. Plaintiff has argued that the IRS procedures were conducted in a manner that denied him due process and deprived him of his right to redeem, and thus he deserves a redemption period or the court should declare the IRS sale results as void or voidable. And, plaintiff contends the title transferred to defendant should be declared void or voidable. But, defendant argues these claims for equitable relief should be denied because plaintiff's own actions preclude such relief.

A plaintiff who seeks equitable relief must himself act equitably. *See Van Skiver v. United States*, 751 F. Supp. 1522, 1525–26 (D. Kan. 1990) (explaining that "a quiet title action is a claim based in equity" and denying plaintiffs' quiet title claim because plaintiffs had waited over two years to bring the action, which was based on the IRS's failure to provide personally served notice of the sale as required by statute, because plaintiffs had received notice by certified mail and this notice included references to the applicable statute governing the sale so the "technical non-compliance" of the IRS by failing to provide personally served notice was "insufficient to warrant the reversal of summary judgment in favor of the Government" because "[e]quity aids the vigilant and not those who slumber on their rights" (internal quotations and citations omitted)); *see also Morgan Guar. Tr. Co. of N.Y. v. Am. Sav. & Loan Ass'n*, 804 F.2d 1487, 1494 (9th Cir. 1986) (explaining that "[e]quity will not aid someone who deliberately foregoes an opportunity to discover material facts" and thus equitable relief is not available to relieve someone of foreseeable consequences that arise from a conscious decision). Here, because plaintiff received advance notice of the sale but never took any steps to learn if the sale

occurred or the redemption period started, defendant argues the equitable relief sought should be denied.

The court need not reach this final argument because it has already determined that due process was provided to plaintiff and plaintiff's claims stemming from this alleged violation fail. Thus, summary judgment in defendant's favor is appropriate regardless of defendant's arguments that plaintiff's own actions should preclude the equitable relief sought.

## IV.    Conclusion

For reasons explained above, the court grants defendant's motion for summary judgment against all of plaintiff's claims. And, the court denies plaintiff's motion for summary judgment. The court concludes plaintiff received notice of his redemption rights that was reasonably calculated under all the circumstances to apprise him of the pendency of the actions affecting his property rights and afford him an opportunity to present his objections. Thus, no due process violation occurred when plaintiff did not receive a second, post-sale notice including additional details about the sale. And, the court concludes no additional redemption period is available to plaintiff under Kansas law. Consequently, the injunctive and quiet title relief sought by plaintiff is denied and summary judgment is granted to defendant against all of plaintiff's claims.

**IT IS THEREFORE ORDERED THAT** defendant Julia Deng's Motion for Summary Judgment (Doc. 31) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff Scott Gregory Hattrup's Motion for Summary Judgment (Doc. 34) is denied.

**IT IS FURTHER ORDERED THAT** defendant Julia Deng's Motion to Supplement (Doc. 37) is granted.

**IT IS SO ORDERED.**

Dated this 3rd day of January, 2020, at Kansas City, Kansas

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge